## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| VIVIAN REYES, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>   v.<br><br>NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK,<br>1 Massachussetts Ave., N.W.<br>Washington, D.C. 200011<br><br>          Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Vivian Reyes ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to herself and on information and belief as to all other matters, by and through undersigned counsel, brings this Class Action Complaint against Defendant National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak" or "Defendant"):

### INTRODUCTION

1.  Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personally identifiable information, including but not limited to names, dates of birth, postal and email addresses, phone numbers, passport numbers, driver's license numbers, government-issued IDs, financial information, and account credentials (collectively, "PII" or "Personal Information") disclosed to unauthorized third parties during a data breach compromising Amtrak in early 2026 (the "Data Breach").

2.  Amtrak is the nation's passenger railroad carrier, serving more than 500 destinations across 46 states, the District of Columbia, and parts of Canada.[1]

---

[1] *Amtrak Facts*, Amtrak, https://www.amtrak.com/about-amtrak/amtrak-facts (last visited May 22, 2026).

3.      In the ordinary course of its business, Amtrak collects, stores, processes, and maintains substantial volumes of sensitive Personal Information, including names, physical mailing addresses, email addresses, payment information, account credentials, trip information, geolocation data, communications, device information, and other identifying consumer data.[2]

4.      In or around April 2026, the cybercriminal threat actor group known as ShinyHunters reportedly claimed to have compromised Amtrak customer data and threatened to publicly release the information unless ransom demands were satisfied.[3]

5.      The exposed data reportedly included approximately 2,106,238 unique email addresses, together with associated names, physical mailing addresses, and customer support records.[4]

6.      Defendant was well aware of or should have known of its data security shortcomings. Despite the highly sensitive nature of the information entrusted to Defendant, Defendant failed to implement and maintain reasonable cybersecurity safeguards necessary to protect Plaintiff's and Class Members' Personal Information from unauthorized access and disclosure.

7.      Defendant's failures to ensure that its servers and systems were adequately secure jeopardized the security of Plaintiff's and Class Members' Personal Information, and exposed Plaintiff and Class Members to fraud and identity theft or the serious risk of fraud and identity theft.

8.      As a result of Defendant's conduct and the resulting Data Breach, Plaintiff and Class Members' privacy have been invaded, their Personal Information is now in the hands of criminals,

---

[2] *See Privacy Policy*, Amtrak, https://www.amtrak.com/planning-booking/policies/privacy-policy (last updated July 23, 2023).

[3] Vilius Petkauskas, H*ackers Threaten to Leak Over 9M Amtrak Records, Including Personal Info*, Cybernews (Apr. 14, 2026), https://cybernews.com/security/hackers-threaten-amtrak-data-leak/.

[4] *See, e.g., Amtrak*, Have I Been Pwned, https://haveibeenpwned.com/Breach/Amtrak (last visited May 19, 2026); UpGuard Team, *Amtrak Data Breach Exposes Over 2 Million Customer Record*s, UpGuard (Apr. 30, 2026), https://www.upguard.com/news/amtrak-data-breach-2026-04-30; Ransomware.Live, National Railroad Passenger Corporation (amtrak.com) Data Breach Information; https://www.ransomware.live/id/TmF0aW9uYWwgUmFpbHJvYWQgUGFzc2VuZ2VyIENvcnBvcmF0aW9uIChhdHRyYWsuY29tKUBzaGlueWh1bnRlcnM (last visited May, 22, 2026).

and they now face an imminent and ongoing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## PARTIES

### Plaintiff Vivian Reyes

9.      Plaintiff Vivian Reyes is a citizen of the State of California and resides in San Diego County, California. Plaintiff Reyes is a customer of Amtrak. In the course of using Defendant's services, Plaintiff Reyes provided Defendant with her sensitive Personal Information.

10.      Plaintiff Reyes has experienced increased spam activity and faces a continuing risk of fraud, identity theft, phishing, and misuse of her information for years to come. As a result of the Data Breach, Plaintiff Reyes anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harm caused by the Data Breach.

### Defendant National Railroad Passenger Corporation d/b/a Amtrak

11.      Defendant National Railroad Passenger Corporation d/b/a Amtrak is a corporation organized under the laws of the District of Columbia with its principal place of business at 1 Massachusetts Avenue, NW, Washington D.C. 20001.

## JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class members, the action is a class action in which one or more Class members are citizens of states different from Defendant, and Defendant is not a government entity.

13.      The Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District, regularly conducts significant business in this District, systematically directs business activities toward this District, derives substantial revenue from customers in this District, and the claims asserted herein arise out of or relate to Defendant's conduct in this District.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant transacts substantial business in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

## FACTUAL ALLEGATIONS

### A.   Overview of Defendant's Business and Data Collection Practices

15.     Amtrak is the nation's passenger railroad carrier, serving more than 500 destinations across 46 states, the District of Columbia, and parts of Canada.[5]

16.     In the ordinary course of its business, Amtrak collects, stores, processes, and maintains substantial volumes of sensitive Personal Information, including names, physical mailing addresses, email addresses, payment information, account credentials, trip information, geolocation data, communications, device information, and other identifying consumer data.[6]

17.     In or around April 2026, the cybercriminal threat actor group known as ShinyHunters reportedly claimed to have compromised Amtrak customer data and threatened to publicly release the information unless ransom demands were satisfied.[7]

18.     The exposed data reportedly included approximately 2,106,238 unique email addresses, together with associated names, physical mailing addresses, and customer support records.[8]

19.     Defendant expressly represents to consumers that it takes data privacy and information security seriously.[9]

20.     Defendant knew that consumers, including Plaintiff and Class Members, would rely on these representations when deciding whether to entrust Defendant with sensitive Personal Information.

---

[5] *Amtrak Facts*, *supra*.

[6] *See Privacy Policy*, *supra*.

[7] Vilius Petkauskas, *supra*.

[8] *See, e.g., Amtrak*, Have I Been Pwned, *supra*; Ransomware.live, Data Breach Information, *supra*.

[9] *See Privacy Policy*, *supra*.

21.     Plaintiff and Class Members reasonably relied on Defendant's representations regarding privacy, confidentiality, data security, and safeguarding customer information when providing Defendant with their sensitive Personal Information in exchange for Defendant's services.

22.     Contrary to Defendant's representations, Defendant failed to implement and maintain reasonable security safeguards sufficient to protect Plaintiff's and Class Members' Personal Information from unauthorized access, exfiltration, disclosure, and misuse.

23.     Had Plaintiff and Class Members known that Defendant would allegedly fail to adequately safeguard their Personal Information, they would not have provided their sensitive information to Defendant and/or would not have used Defendant's services on the same terms.

### B.  The Data Breach

24.     In or around April 2026, the cybercriminal threat actor group known as ShinyHunters reportedly claimed to have compromised Amtrak customer data and threatened to publicly release the information unless ransom demands were satisfied.[10]

25.     The exposed data reportedly included over 2 million unique email addresses, together with associated names, physical mailing addresses, and customer support records.[11]

26.     Upon information and belief, the information accessed and exfiltrated as a result of the Data Breach includes, but is not limited to, Plaintiff's and Class Members' names, dates of birth, postal and email addresses, phone numbers, passport numbers, driver's license numbers, Social Security numbers (SSNs), taxpayer identification numbers, government-issued IDs, business records, financial information, tax-related information, and account credentials.

27.     As of the date of filing, Defendant has made no public acknowledgement of the Data Breach and has not provided affected consumers with formal notice of the Data Breach.

---

[10] Vilius Petkauskas, *supra*.

[11] *See, e.g., Amtrak*, Have I Been Pwned, *supra*; Ransomware.Live, Data Breach Information, *supra*.

### C. <u>Impact of the Data Breach</u>

28. The actual extent and scope, and the impact, of the Data Breach on Defendant's customers (or other affiliated persons) remains uncertain. Unfortunately for Plaintiff and Class Members, the damage is already done because their sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

29. Defendant knew or should have known that its affected IT systems and/or servers were insecure and did not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, Defendant failed to implement reasonable measures for its data security systems, privacy policies, and IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

30. The harm caused to Plaintiff and Class Members by the Data Breach has already been suffered.

31. The Data Breach creates a heightened security concern for Plaintiff and Class Members because their SSNs, financial information, and other sensitive information was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. In order to obtain a new number, a breach victim has to demonstrate ongoing harm from misuse of his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

32. Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, Social Security numbers "can be an identity thief's most valuable piece of consumer information."[12] TIME quotes data security researcher Tom Stickley, who is employed by companies to find flaws in their computer

---

[12] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[13]

33.     Defendant had a duty to keep Plaintiff's and Class Members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class Members provided their Personal Information to Defendant with the understanding that Defendant would comply with its privacy policies and its obligations to keep such information confidential and secure from unauthorized disclosures.

34.     Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years.

### D. Theft of Personal Information Has Serious Consequences for Victims

35.     Data breaches are by no means new, and they should not be unexpected. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[14] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

36.     These types of attacks should be anticipated by companies that store sensitive and personally identifying information, and such companies must ensure that their data privacy and security practices and protocols are adequate to prevent known and expected attacks.

---

[13] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifax-data-breach-social-security/.

[14] Dennis Green et al., *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

37.     Theft of Personal Information is serious. The Federal Trade Commission has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive services, start new utility accounts, and incur charges and credit in a person's name.[15]

38.     Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in an arrest warrant being issued in the victim's name.[16]

39.     According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[17]

---

[15] *See What to Know About Identity Theft*, FEDERAL TRADE COMMISSION CONSUMER INFORMATION, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last updated Sept. 2024).

[16] *See Warning Signs of Identity Theft*, FEDERAL TRADE COMMISSION, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed May 22, 2026).

[17] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself,* EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

40.    Personal Information is a valuable property right.[18] The value of sensitive personal information as a commodity is measurable.[19] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[20]

41.    Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

42.    Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

43.    Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies

---

[18] *See* Marc van Lieshout, *The Value of Personal Data*, 457 International Federation for Information Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[19] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[20] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[21]

44.     There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[22]

45.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

46.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[23]

47.     It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making the information available for sale on the black-market.

**E.  Defendant Failed to Act in the Face of a Known Risk of a Data Breach**

48.     Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other similar data breaches, Defendant failed to take reasonable steps to adequately protect the sensitive Personal Information in its possession, leaving its customers and other affiliated individuals exposed to risk of fraud and identity theft.

---

[21] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[22] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 Journal of Systemics, Cybernetics and Informatics 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[23] Identity Theft Resource Center, *2021 Consumer Aftermath Report*, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.

49.     Defendant is, and at all relevant times has been, aware that the Personal Information it handles and stores in connection with providing its products and services is highly sensitive. As a company that collects and utilizes highly sensitive and identifying information in connection with providing financial products and services, Defendant is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

50.     Defendant was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information in its possession was adequately secured.

51.     Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

52.     The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

53.     Despite the fact that Defendant was on notice of the very real possibility of data theft, it still failed to implement adequate security measures and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and other Class Members' Personal Information to criminals.

54.     Defendant permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.

55.     Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[24]

56.     As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including

---

[24] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.

but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft and fraud; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

57. Victims of the Data Breach are subject to an imminent and ongoing risk of harm, including identity theft and fraud.

58. As a result of Defendant's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

59. Plaintiff brings this action individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of herself and the following Classes:

**Nationwide Class**
All persons residing in the United States whose Personal Information was compromised in the Data Breach (the "Nationwide Class").

**California Subclass**
All persons residing in California whose Personal Information was compromised in the Data Breach (the "California Subclass").

60. The "Nationwide Class" and "California Subclass" are collectively referred to herein as the "Class."

61. Excluded from the Class are Defendant, including any entity in which any Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by any Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns

of any Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families. Plaintiff reserves the right to expand, limit, modify, or amend the proposed Class definition before the Court determines whether certification is appropriate.

62.     The Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2), and (b)(3) for all of the following reasons.

63.     Numerosity. Although the exact number of Class members is uncertain, and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable, believed to amount to tens of thousands of persons. The disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and the Court. Information concerning the exact size of the putative class is within the possession of Defendant. The parties will be able to identify each member of the Class through discovery, including through Defendant's document production and/or related discovery.

64.     Commonality. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

a.      Whether and to what extent Defendant had a duty to protect Plaintiff's and Class Members' PII.

b.      Whether Defendant breached its duty to protect Plaintiff's and Class Members' PII.

c.      Whether Defendant's data security systems prior to the Data Breach met the requirements of relevant laws;

d.      Whether Defendant's data security systems prior to the Data Breach met industry standards;

e.      Whether the actions and/or inaction of Defendant caused Plaintiff's and Class Members' PII to be disclosed or compromised;

f.      Whether Defendant was negligent;

g.      Whether Plaintiff and other Class Members are entitled to injunctive relief; and

h.      Whether Plaintiff and other Class Members are entitled to damages as a result of Defendant's conduct.

- 13 -

65. Typicality. All of Plaintiff's claims are typical of the claims of the proposed Class they seek to represent in that: Plaintiff's claims arise from the same practice or course of conduct that forms the basis of the Class claims; Plaintiff's claims are based upon the same legal and remedial theories as the proposed Class and involve similar factual circumstances; there is no antagonism between the interests of Plaintiff and absent Class Members; and the injuries that Plaintiff suffered are similar to the injuries that Class Members have suffered.

66. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff have retained counsel experienced in complex class action litigation, including data breach and consumer protection cases. Plaintiff has no interests that are contrary to or in conflict with those of the Class.

67. Predominance. The proposed class action meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over any questions which may affect only individual Class members.

68. Superiority. The proposed class action also meets the requirements of Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions is superior to multiple individual actions or piecemeal litigation, avoids inconsistent decisions, presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member. Absent a class action, the majority of Class Members would find the cost of litigating their claims prohibitively high and would have no effective remedy.

69. Plaintiff's claims also meet the requirements of Federal Rule of Civil Procedure 23(b)(1) because prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that would establish incompatible standards for Defendant. Varying adjudications could establish incompatible standards with respect to: whether Defendant's ongoing conduct violates the claims alleged herein; and whether the injuries suffered by Class Members are legally cognizable, among others. Prosecution of separate actions by individual Class Members would also create a risk of individual adjudications that would be dispositive of the

interests of other Class Members not parties to the individual adjudications, or substantially impair or impede the ability of Class Members to protect their interests.

70.    Injunctive Relief. This action also satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making injunctive and declaratory relief appropriate with respect to the Class as a whole. Class Members continue to face ongoing harm from the exposure of their PII and require injunctive relief to address Defendant's inadequate security practices, breach response, and failure to prevent ongoing dissemination of highly sensitive PII.

## CAUSES OF ACTION

### COUNT I
**Negligence**

71.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.    Defendant required Plaintiff and the Class Members to submit highly sensitive, non-public PII to Defendant in order to obtain products and services from Defendant.

73.    Defendant owed a duty to Plaintiff and to the Class to exercise reasonable care in obtaining, securing, safeguarding, properly disposing of, and protecting Plaintiff's and Class Members' PII within its control from being compromised by, or being accessed by, unauthorized third parties. This duty arose from multiple sources, including Defendant's voluntary assumption of this duty by promising to protect PII in its public-facing privacy notices and disclosures.

74.    The duty was further established by the special relationship created when Defendant required Plaintiff and Class Members to provide highly sensitive PII as a condition of obtaining Defendant's products and services. The harm that would result from a breach of such sensitive information was foreseeable.

75.    Defendant alone was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiff and other Class Members from the Data Breach.

76.    In addition, Defendant had a duty to use reasonable security measures under Section A of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits

- 15 -

"unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

77.    Defendant's duty to use reasonable care in protecting the PII arose not only as a result of the common law and the statutes and regulations described above, but also because it is bound by, and has committed to comply with, industry standards for the protection of confidential information.

78.    Defendant breached its common law, statutory, and other duties—and thus, was negligent—by failing to use reasonable measures to protect its customers' PII, and by failing to provide timely notice of the Data Breach. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

   a.   failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and the Class Members' PII;

   b.   failing to adequately monitor the security of its networks and systems; and

   c.   allowing unauthorized access to Plaintiff's and the Class Members' PII.

79.    Defendant owed a duty of care to the Plaintiff and the members of the Class because they were foreseeable and probable victims of any inadequate security practices.

80.    It was foreseeable that Defendant's failure to use reasonable measures to protect PII and to provide timely notice of the Data Breach would result in injury to Plaintiff and other Class Members. Further, the breach of security, unauthorized access, and resulting injury to Plaintiff and the members of the Class were reasonably foreseeable.

81.    It was therefore foreseeable that the failure to adequately safeguard PII would result in one or more of the following injuries to Plaintiff and the members of the proposed Class: ongoing, imminent, certainly impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the deep web black market; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and

credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

82.    Defendant breached its duties of care through a cascade of failures. Defendant knew or reasonably should have known of the inherent risks in collecting and storing the PII of Plaintiff and members of the Class and the critical importance of providing adequate security of that information, yet despite the foregoing had inadequate cybersecurity systems and protocols in place to secure the PII. Defendant unlawfully breached its duty to use reasonable care to protect and secure the PII of Plaintiff and the Class by representing to consumers that it maintained adequate data security, and then failing to implement basic security measures to protect Plaintiff's and Class Members' PII.

83.    Defendant's breach was a substantial factor in causing Plaintiff's and Class Members' injuries. But for Defendant's failure to implement basic security measures, the breach would not have occurred.

84.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have been seriously and permanently damaged by the Data Breach. Specifically, Plaintiff and members of the Class have been injured by, among other things; (1) the exposure of their PII, including identification information such as home addresses, to online threat actors; (2) the loss of the ability to control how their PII is used; (3) compromise, publication and/or theft of Plaintiff's and Class Members' PII; (4) out-of-pocket costs associated with the prevention, detection and recovery from identity theft and/or unauthorized use of financial accounts; (5) lost opportunity costs associated with their efforts expended and the loss of productivity from addressing as well as attempting to mitigate the actual and future consequences of the Data Breach including, but not limited to, efforts spent researching how to prevent, detect, and recover from PII misuse; (6) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit denial and/or increased cost of the use, the use of credit, credit scores, credit reports, and assets; (7) continued risks to their PII, which remains in Defendant's possession and may be subject to further breaches so long as Defendant fails to undertake appropriate and adequate

measures to protect the PII in its possession; and (8) future costs in terms of time, effort and money that will be spent trying to prevent, detect, contest and repair the effects of the PII compromised as a result of the Data Breach for the remainder of the Plaintiff's and Class Members' lives.

85.    Plaintiff and the Class seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

## COUNT II
### Negligence Per Se

86.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

87.    Defendant's duties arise from, *inter alia*, Section 5 of the FTCA, 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to employ reasonable measures to protect and secure PII.

88.    Defendant violated Section 5 of the FTCA by failing to use reasonable measures to protect Plaintiff's and other Class Members' PII and not complying with applicable industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtains and stores, and the foreseeable consequences of a data breach involving PII including, specifically, the substantial damages that would result to Plaintiff and other Class Members.

89.    Defendant's violation of Section 5 of the FTCA constitutes negligence *per se*.

90.    Plaintiff and Class Members are within the class of persons that Section 5 of the FTCA was intended to protect.

91.    The harm occurring as a result of the Data Breach is the type of harm Section 5 of the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and other Class Members as a result of the Data Breach.

92.    It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

93.    The injury and harm that Plaintiff and the other Class Members suffered was the direct and proximate result of Defendant's violations of Section 5 of the FTCA. Plaintiff and Class Members have suffered (and will continue to suffer) economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and/or (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

## COUNT III
### Invasion of Privacy (Intrusion Upon Seclusion)

94.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

95.    The Restatement (Second) of Torts states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

96.    Plaintiff and the Class Members had a reasonable expectation of privacy in the Personal Information that Defendant disclosed without authorization.

97.    By failing to keep Plaintiff's and Class Members' Personal Information safe, knowingly employing inadequate data privacy policies and protocols, and disclosing Personal

Information to unauthorized parties for unauthorized use, Defendant unlawfully invaded Plaintiff's and Class Members' privacy by, *inter alia*:

    a.   intruding into Plaintiff's and Class Members' private affairs in a manner that would be highly offensive to a reasonable person; and

    b.   invading Plaintiff's and Class Members' privacy by improperly using their Personal Information properly obtained for a specific purpose for another purpose, or disclosing it to some third party;

    c.   failing to adequately secure Personal Information from disclosure to unauthorized persons; and

    d.   enabling the disclosure of Plaintiff's and Class Members' Personal Information without consent.

98.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider its actions highly offensive.

99.    Defendant knew that its IT systems and servers were vulnerable to data breaches prior to the Data Breach.

100.    Defendant invaded Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class members' private affairs by disclosing their Personal Information to unauthorized persons without their informed, voluntary, affirmative, and clear consent.

101.    As a proximate result of such unauthorized disclosures, Plaintiff's and Class Members' reasonable expectations of privacy in their Personal Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class Members' protected privacy interests.

102.    In failing to protect Plaintiff's and Class members' Personal Information, and in disclosing Plaintiff's and Class members' Personal Information, Defendant acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private.

103.    Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this Count.

## COUNT IV
### Breach Of Implied Contract

104.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

105.    Plaintiff and members of the Class were required to provide, and did provide, their PII to Defendant as a condition of obtaining products and services from Defendant.

106.    Plaintiff and members of the Class had no alternative and did not have any bargaining power with regard to providing their PII. Defendant required disclosure of their PII as a condition to access and use of Defendant's products and services, which the Plaintiff and members of the Class did.

107.    When Plaintiff and Class Members provided their PII to Defendant in exchange for access and use of Defendant's products and services, they entered into implied contracts with Defendant pursuant to which Defendant agreed to safeguard and protect such PII and to timely and accurately notify them if their data had been breached and compromised.

108.    Defendant solicited prospective customers to provide their PII as part of its regular business practices. These individuals accepted Defendant's offers and provided their PII to Defendant. In entering into such implied contracts, Plaintiff and the Class reasonably assumed that Defendant's data security practices and policies were reasonable and consistent with industry standards, and that Defendant would use part of the funds received from Plaintiff and the Class to pay for adequate and reasonable data security practices.

109.    Plaintiff and the Class would not have provided and entrusted their PII to Defendant in the absence of the implied contract between them and Defendant to keep the information secure.

110.    Plaintiff and the Class fully performed their obligations under the implied contracts with Defendant.

111.    Defendant breached its implied contracts with Plaintiff and the Class by failing to safeguard and protect their PII and by failing to provide timely and accurate notice that their personal information was compromised as a result of the Data Breach.

112.    As a direct and proximate result of Defendant's breaches of its implied contracts, Plaintiff and the Class sustained actual losses and damages as described herein.

113.    Plaintiff and the Class seek damages, injunctive relief, and other and further relief as the Court may deem just and proper.

## COUNT V
### Violation of the Washington D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.* ("CPPA")

114.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

115.    The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, et seq. ("CPPA") prohibits unlawful trade practices. The prohibited trade practices include, in part, the misrepresentation of a material fact that has a tendency to mislead, failure to state a material fact if such failure tends to mislead, use of innuendo or ambiguity as to a material fact that has a tendency to mislead, and misrepresentation of a material fact that is otherwise misleading. DC ST § 28-3904 (e), (f), (f−1).

116.    Defendant is a "merchant"; Plaintiff and Class Members are "consumers"; and Defendant's conduct in connection with the solicitation and sale of transportation services is a "trade practice" involving "goods or services." D.C. Code § 28-3901 (a)(2), (3), (6), (7).

117.    Defendant's unfair and deceptive practices are likely to mislead—and have in fact misled—reasonable consumers, such as Plaintiff and the Class, and therefore violate D.C. Code § 28-3904.

118.    Defendant misrepresented material facts and/or failed to state material facts, which had a tendency to mislead, and did mislead, Plaintiff and Class Members. Defendant misled consumers, including Plaintiff, by failing to disclose material facts, including that: (a) Plaintiff and Class Members' PII would be kept private; (b) Defendant would employ reasonable cybersecurity

measures; and (c) Defendant would take steps to mitigate the impact of a data breach upon Plaintiff and Class Members.

119.    Defendant's material omissions and affirmative statements are false, misleading, and deceptive. Plaintiff and Class members: (a) would have sought out and paid less for their tickets and/or (b) paid a price for a service they believed came with reasonable data security measures that were, in fact, not included.

120.    Defendant has deceived reasonable consumers, including Plaintiff and Class members, into paying more for their services than they otherwise would have absent Defendant's deceptive and illegal conduct. As a result of Defendant's deceptive trade practices detailed herein, Plaintiff and Class members have been deprived of truthful information regarding their choice of transportation services.

121.    Plaintiff seeks injunctive relief for, among other things, the Court to enjoin Defendant's above-described wrongful acts and practices, and for restitution and disgorgement.

**COUNT VI**
**Violations of the California Consumer Privacy Act,**
**Civ. Code § 1798.150, *et seq*. ("CCPA")**

122.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

123.    Plaintiff Reyes brings this claim individually and on behalf of the California Subclass.

124.    Section 1798.150(a)(1) of the California CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

125.    Plaintiff Reyes is a "consumer" as defined by Cal. Civ. Code § 1798.140(g).

126.    Defendant is a "business" as defined by Cal. Civ. Code § 1798.140(c) because it conducts business in the state of California, collects consumers' Personal Information, and on information and belief, has annual revenues of in excess of $25,000,000.

127. Plaintiff Reyes's name in combination and other sensitive PII, compromised in the Data Breach constitutes "personal information" within the meaning of the CCPA. *See* Cal. Civ. Code § 1798.150(a)(1).

128. Through the Data Breach, Plaintiff Reyes's PII was accessed without authorization, exfiltrated, and stolen by criminals in a nonencrypted and/or nonredacted format.

129. The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

130. In accordance with Cal. Civ. Code § 1798.150(b)(1), contemporaneous with the filing of this Complaint, Plaintiff Reyes's counsel served Defendant with notice of these CCPA violations by certified mail, return receipt requested.

131. If Defendant fails to respond to Plaintiff Reyes's notice letter or agree to rectify the violations detailed above and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff Reyes also will seek actual, punitive, and statutory damages, restitution, attorneys' fees and costs, and any other relief the Court deems proper as a result of Defendant's CCPA violations.

## COUNT VII
### Violations of the California Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL")

132. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

133. Plaintiff Reyes brings this claim individually and on behalf of the California Subclass.

134. Defendant's conduct constitutes unfair, illegal, and fraudulent business practices within the meaning of the California Business & Professions Code § 17200, *et seq*. (the "UCL").

135. Defendant's conduct violated certain laws as alleged herein, including the California Consumer Privacy Act (Cal. Civ. Code § 1798.150, et seq.). By engaging in the said conduct in the course of doing business within California, Defendant engaged in unlawful business practices in violation of the UCL as to Plaintiff Reyes and the California Subclass.

136. By engaging in the above-described conduct in the course of doing business, Defendant engaged in unfair business practices in violation of the UCL because the harm to Plaintiff

Reyes and the California Subclass outweighed any utility that Defendant's conduct may have produced.

137. Defendant's failure to disclose information concerning the Data Breach directly and promptly to affected customers constitutes a fraudulent act or practice in violation of the UCL. Defendant's failure to adequately protect Plaintiff Reyes's and the California Subclass's Personal Information, despite assurances it would do so and that Defendant met industry standards for data security, also constitutes a fraudulent act or practice in violation of the UCL.

138. Plaintiff Reyes and members of the California Subclass suffered injury in fact as a result of Defendant's conduct.

139. Individually and on behalf of the Subclass, Plaintiff Reyes seeks injunctive relief, restitution, and all other damages available under this cause of action.

**COUNT VIII**
**Declaratory and Injunctive Relief**

140. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq*., this Court may enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Moreover, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

141. An actual controversy exists between Plaintiff and Class members on one hand, and Defendant on the other, regarding Defendant's data security practices and duties going forward.

142. The harm to Plaintiff and Class members is ongoing and irreparable. Their PII remains exposed on the internet and to cybercriminals. They face continuing risks of identity theft, fraud, stalking, and harassment. Without injunctive relief, Defendant is likely to continue its inadequate practices, putting current and future consumers at risk.

143. Plaintiff and Class members have no adequate remedy at law. Money damages cannot undo the exposure of their PII or eliminate the ongoing risks they face. Only prospective relief can prevent further harm and ensure Defendant implements adequate measures.

144.    Plaintiff seeks a declaration that:

a.  Defendant's data security practices violated and continue to violate its legal obligations;

b.  Defendant has obligations to prevent the dissemination of stolen personal information on its platforms;

c.  Defendant must implement comprehensive measures to protect consumers from data breaches and their consequences;

d.  Defendant must delete all unnecessary Personal Information in its possession;

e.  Defendant must provide transparent disclosures about its practices;

f.  Defendant must submit to regular audits by qualified third parties.

145.    Plaintiff further seek injunctive relief requiring Defendant to implement comprehensive remedial measures. Plaintiff seek an order requiring immediate implementation of comprehensive information security measures, including encryption of all PII at rest and in transit, access controls limiting who can view sensitive data, regular security audits and penetration testing, employee training on data security, incident response procedures, and data minimization and retention policies. Defendant must also delete all personal information that is no longer necessary for legitimate business purposes, provide clear and conspicuous notice to consumers about what data is collected, how it is used, how long it is retained, and how it is protected, implement a comprehensive information security program that is reasonably designed to protect the security, confidentiality, and integrity of personal information, and engage third-party security auditors to assess compliance.

146.    Plaintiff and Class Members continue to suffer injury as a result of Defendant's negligent exposure of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

147.    Additionally, Plaintiff's and Class Members' PII, when contained in electronic form, is highly attractive to criminals who can nefariously use their PII for fraud, identity theft, and other crimes without their knowledge and consent.

148.    As alleged herein, Defendant's failure to implement adequate cybersecurity measures and protocols led to the compromise of Plaintiff's and Class Members' PII, which they were required to provide as a condition of obtaining services from Defendant, resulting in irreparable harm.

149.    Defendant remains in possession of Plaintiff's and Class Members' PII. It is imperative that the Court intervene to assure that the Defendant takes all reasonable steps to protect that PII lest there be another data breach.

150.    The balance of equities tips decidedly in Plaintiff's favor. The burden on Defendant of implementing proper security measures is minimal compared to the enormous ongoing harm to Class members from continued exposure of their personal information.

151.    Injunctive relief would serve the public interest by protecting consumers' personal information, preventing the weaponization of data breaches, and enforcing minimum standards for companies that collect sensitive data and platforms that can amplify harm.

152.    The hardship to Plaintiff and Class Members if such an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Absent an injunction, Plaintiff will likely be subjected to substantial identity theft and other damages, whereas the cost to Defendant of complying with an injunction by employing reasonable data security policies, practices, and measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and the Class as follows:

a.    Certifying that the action may be maintained as a class action and appointing Plaintiff as Class representatives and the undersigned counsel as Class Counsel to represent the putative Class;

b.      Awarding Plaintiff and the Class appropriate relief, including actual damages, compensatory damages, and punitive damages, as allowed by law;

c.      Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiff and the Class;

d.      Awarding injunctive relief as necessary to protect the interests of Plaintiff and the Class;

e.      Awarding Plaintiff and the Class prejudgment and post-judgment interest;

f.      Awarding Plaintiff and the Class their attorneys' fees and costs, as allowable by law; and

g.      Awarding such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of the Class, demands a trial by jury as to all issues triable of right.

DATED: May 22, 2026                          Respectfully submitted,

*/s/ Andrew W. Ferich*
Andrew W. Ferich (D.C. Bar No. 1015061)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Tel:  310-474-9111
Fax: 310-474-8585

Tina Wolfson (D.C. Bar No. 475161)
*twolfson@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505
Tel:  310-474-9111
Fax: 310-474-8585

Bradley King (*pro hac vice* forthcoming)
*bking@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
521 Fifth Avenue, 17th Floor

- 29 -

New York, New York 10175
Telephone: (917) 336-0171
Facsimile: (917) 336-0177


*Counsel for Plaintiff and the Proposed Class*